# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

v.

LEONARD JONES,
*Defendant*.

No. 3:99-cr-264-5 (VAB)

## RULING AND ORDER ON FIRST STEP ACT MOTION FOR IMMEDIATE RELEASE OR RESENTENCING

Leonard Jones ("Defendant") moves for his immediate release or resentencing under Section 404 of the recently-enacted First Step Act. *See* First Step Act Mot. for Immediate Release or Resentencing, ECF No. 2573 (Sept. 5, 2019) ("Def.'s Mot."); *see also* Mem. in Support of Def.'s Mot., ECF No. 2597 (Oct. 7, 2019) ("Def.'s Mem."). Mr. Jones is currently serving three concurrent life sentences.

The United States of America (the "Government") has opposed Mr. Jones's motion. Government's Response to Def.'s Mot., ECF No. 2618 (Nov. 20, 2019) ("Gov't Opp.").

For the reasons explained below, the Court (1) **GRANTS** the motion; (2) **ORDERS** that Mr. Jones's sentence of incarceration be **REDUCED** to **TIME SERVED** upon arrival at MDC Brooklyn on **December 23, 2019**; and (3) **IMPOSES** a term  of supervised release of **FIVE (5) YEARS**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Because of his involvement with a violent drug trafficking enterprise in Bridgeport, Connecticut, in the late 1990s, Mr. Jones has been in federal custody since January 2002. *See* Docket Entries (Jan. 15, 2002); *see also United States v. Luke Jones*, 482 F.3d 60, 63–66 (2d Cir.

2006) (detailing evidence as to the conspiracy introduced at trial against Mr. Jones's brother, Luke Jones, in light most favorable to the Government).

On December 20, 2001, a federal grand jury indicted Mr. Jones and other alleged members of the drug trafficking enterprise on various conspiracy charges and racketeering acts. *See* Fifth Superseding Indictment, ECF No. 813 (Dec. 20, 2001).

On November 20, 2002, the Honorable Alan H. Nevas of the United States District Court for the District of Connecticut (this "District") declared a mistrial in the Government's case against Mr. Jones and other co-defendants. Jury Trial – Mistrial Declared, ECF No. 1259 (Nov. 20, 2002).

On December 3, 2002, the case was transferred to the Honorable Peter C. Dorsey. Order of Transfer, ECF No. 1263 (Dec. 3, 2002).

On April 24, 2003, after a month-long trial before Judge Dorsey, a jury convicted Mr. Jones of violating 18 U.S.C. § 1962(c), Racketeering in Corrupt Organizations ("RICO") (Count One); 18 U.S.C. § 1962(d), RICO Conspiracy (Count Two); 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A), and 846, Conspiracy to Distribute and Distribution of More Than 1000 Grams of Heroin and 50 Grams of Cocaine Base (Count Six); 18 U.S.C. § 1959(a)(5), Conspiracy to Murder Anthony Scott (Count Twenty-One). Jury Verdict, ECF No. 1408 (Apr. 24, 2003). The underlying racketeering acts for Count One's RICO charges were Racketeering Act 1-D (the "D-Top" Drug Conspiracy), Racketeering Act 9 (Conspiracy to Murder Foundation Members and Associates), and Racketeering Act 11-A (Conspiracy to Murder Anthony Scott)[1]. *Id.* at 2-4. As to the drug conspiracy charges in Count Six, the jury assigned to Mr. Jones a quantity of 1000

---

[1] Originally charged with the murder of Anthony Scott (Count 22) and the use of a firearm in relation to that murder (Count 23), the Government moved to dismiss these counts before they went to the jury, although after Mr. Jones moved for judgment of acquittal on these counts,. See Sent. Tr., ECF No. 1518 at 3:4-4:13 (Oct. 10, 2003).

grams or more of heroin, *id.* at 18; at least 1000 grams but less than 5000 grams of cocaine, *id.* at 19; and at 50 grams or more of cocaine base, *id.*

On September 3, 2003, Judge Dorsey sentenced Mr. Jones to the maximum of life imprisonment with no prospect of parole on Counts One, Two, and Six; ten years imprisonment on Count Twenty-One; and a special assessment of $400. Judgment, ECF No. 1493 (Sept. 3, 2003). The terms of imprisonment were to all run concurrently with each other. *Id.* Judge Dorsey also listed the special conditions of supervised release for Count Twenty-One. *Id.*

On September 22, 2003, Mr. Jones appealed his conviction and sentence. Notice of Appeal, ECF No. 1507 (Sept. 22, 2003).

On June 2, 2006, the U.S. Court of Appeals for the Second Circuit (the "Second Circuit") first dismissed the appeal for failure to prosecute, Mandate of USCA, ECF No. 2065 (June 9, 2006), but then *sua sponte* reinstated the appeal and ordered new counsel be appointed under the Criminal Justice Act, Order of USCA, ECF No. 2066 (June 9, 2006). The Second Circuit later dismissed the appeal again for failure to prosecute. Mandate of USCA, ECF No. 2187 (Apr. 16, 2007).

On October 20, 2008, ruling on an appeal filed by Mr. Jones's co-defendant and nephew, Lyle Jones, the Second Circuit affirmed the judgments of conviction, but remanded the cases of Lyle Jones and Leonard Jones for resentencing consistent with *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). *United States v. Jones*, 296 F. App'x 179, 184 (2d Cir. 2008); *see also* Mandate of USCA, ECF No. 2270 (Dec. 29, 2008).

On February 3, 2009, Judge Dorsey issued an order to show cause in which he ordered both Mr. Jones and the Government to show cause as to whether Mr. Jones "should be brought before this Court for the purposes of re-sentencing or whether reconsideration without [his]

3

presence shall be deemed adequate." Order to Show Cause, ECF No. 2274 (Feb. 3, 2009). There

was no response from either the Government or Mr. Jones's attorney. *See* Docket Entries.

On April 13, 2009, Judge Dorsey issued another order to show cause and extended to

deadline for either side to respond to June 1, 2009. Order to Show Cause, ECF No. 2287) Apr.

13, 2009).

On June 4, 2009, the Government moved for an extension of time from June 1, 2009, to

June 17, 2009, which the Court granted, but the Government did not file a memorandum. *See*

Docket Entries.

On August 4, 2009, without moving for an extension of time or explaining the

untimeliness of the submission, Mr. Jones's attorney submitted two pages of text in support of

re-sentencing, arguing that Mr. Jones should be re-sentenced in light of his age (already over age

fifty at the time) and "to avoid unwarranted sentence disparities[.]"Memorandum, ECF No. 2308

at 1-2 (Aug. 4, 2009). His attorney[2] also waived Mr. Jones's presence at a resentencing hearing.

*Id.* at 2 ("[I]n the event that the court decides to reconsider Leonard's sentence and re-sentence

him; such reconsideration and re-sentencing will not require his presence in court.").

On October 5, 2009, Judge Dorsey declined to re-sentence Mr. Jones:

> Defendant here stands convicted of very serious misconduct which
> caused serious negative impact on the community. His role in the
> distribution of a vast amount of illegal drugs must be found to have
> had a major negative impact on the lives of users of the drugs. While
> defendant is not solely responsible for the effects of the use of the
> drugs for the distribution of which he stands convicted, he
> nonetheless was a major factor in those affected by their use. Further
> his motivation in the role he played in the distribution was the
> substantial profit he derived from the sale of drugs to the extent as
> was demonstrated in this case. His ruthless pursuit of the distribution
> by violence and murder cannot be said to have any redeeming

---

[2] Mr. Jones's attorney throughout this time was the same, despite the Second Circuit's order for new counsel to be appointed under the Criminal Justice Act. *See* Order of USCA, ECF No. 2066 (June 9, 2006).

> quality and suggest a real risk of a return to a life of crime if he is
> freed from a long sentence. . . .
>
> What [Defendant] does not recognize is . . . [h]e had a greater role
> as the leader of the organization.

Memorandum of Decision re: Reduction of Sentence, ECF No. 2315 at 2 (Oct. 5, 2009) ("Dorsey Order").[3]

On May 9, 2016, Mr. Jones moved to vacate, set aside, or vacate his sentence under 28 U.S.C. § 2255. Mot. to Vacate, Set Aside or Correct Sentence, No. 3:16-cv-706 (VAB), ECF No. 1 (May 9, 2016) ("§ 2255 Mot.").

On December 21, 2018, Congress passed, and the President of the United States, Donald J. Trump, signed into law, the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (hereafter, the "First Step Act"), which "made retroactive some provisions of the Fair Sentencing Act [of 2010, Pub. L. 111-220; 124 Stat. 2372]." *United States v. Bobby Medina*, No. 3:05-cr-58 (SRU), 2019 WL 3769598, at *2 (D. Conn. July 17, 2019).

On May 10, 2019, on grounds unrelated to the First Step Act, this Court denied Mr. Jones's § 2255 motion because (1) it was time-barred and (2) even if it was timely, Mr. Jones's sentence had already been properly reconsidered by Judge Dorsey when the Second Circuit remanded his direct appeal. Ruling on § 2255 Mot., No. 3:16-cv-706 (VAB), ECF No. 8 at 4-7 (May 10, 2019); *see id.* at 7 (noting that, at that time, Mr. Jones had "not provided this Court with any basis, legal or equitable, for reaching a decision different from his previous resentencing").

On September 5, 2019, Mr. Jones moved for his immediate release or resentencing under Section 404 of the First Step Act. Def.'s Mot.

---

[3] Judge Dorsey also noted that Mr. Jones's criminal conduct was comparable to co-defendants Aaron Harris and Quinne Powell, who each received life sentences. Dorsey Order at 2.

On September 16, 2019, the U.S. Probation Office filed a supplemental Pre-Sentencing Report, and took the position that Mr. Jones was not entitled to relief under the First Step Act. First Step Act of 2018 Addendum to the Presentence Report, ECF No. 2578 (Sept. 16, 2019) ("First Step Supp. PSR").

On October 7, 2019, Mr. Jones filed a memorandum in support of his motion. Def.'s Mem.

On November 20, 2019, the Government briefly opposed Mr. Jones's motion. Gov't Opp.

On November 22, 2019, Mr. Jones filed a reply in further support of his motion. Def.'s Reply Mem. in Support of Def.'s Mot., ECF No. 2619 (Nov. 22, 2019) ("Def.'s Reply").

While incarcerated for almost the last twenty years, Mr. Jones has participated in numerous educational courses, and in the last six years he has not received a single disciplinary ticket. Def.'s Mem. at 12 n.19 (referencing an exhibit in the First Step Act Supplemental PSR – Mr. Jones's Bureau of Prisons chronological disciplinary record and education information, ECF No. 2578-9); *see also id.* ("His most recent [disciplinary] ticket, in August 2013, is for failing to stand for count. Leonard's only other disciplinary ticket within the last 10 years is for 'being unsanitary or untidy' in 2012. . . . His most serious offense, possessing intoxicants in 2005 . . . resulted in a loss of 27 days of good conduct time. No other infraction resulted in a loss of good conduct time.").

## II.    STANDARD OF REVIEW

Enacted in 2018, "Section 404 of the First Step Act authorizes retroactive application of Sections 2 and 3 of the Fair Sentencing Act to defendants who were sentenced for crack cocaine offenses committed prior to August 3, 2010." *United States v. Jamel Williams* ("*J. Williams*"), No. 03-CR-795, 2019 WL 3842597, at *2 (E.D.N.Y. Aug. 15, 2019). The Fair Sentencing Act of

2010 "reduced [future] statutory penalties for cocaine base[] offenses in order to alleviate the severe sentencing disparity between crack and powder cocaine." *United States v. Sampson,* 360 F. Supp. 3d 168, 169 (W.D.N.Y. Mar. 13, 2019) (internal citations and quotations omitted); *see also* Fair Sentencing Act of 2010, Pub. L. No. 220; 124 Stat. 2372 (hereafter "Fair Sentencing Act").

"Specifically, section 404 of the First Step Act permits 'a court that imposed a sentence for a covered offense' to 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.'" *United States v. Lawrence Williams* ("*L. Williams*"), No. 03-CR-1334, 2019 WL 2865226, at *2 (S.D.N.Y. July 3, 2019) (quoting First Step Act § 404).

"The First Step Act does not mandate sentence reductions for defendants" who are eligible for relief. *United States v. Glore*, 371 F. Supp. 3d 524, 527 (E.D. Wis. Mar. 6, 2019). Instead, "it leaves to the court's discretion whether to reduce their sentences." *Id.*; *see also United States v. Rose*, 379 F. Supp. 3d 223, 233 (S.D.N.Y. May 24, 2019) ("Congress clearly intended relief under § 404 of the First Step Act to be discretionary, as the Act specifically provides that '[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section.'" (quoting First Step Act, § 404(c))).

## III.   DISCUSSION

Because Mr. Jones has already served his full ten-year term of imprisonment for Count Twenty-One for conspiracy to murder Anthony Scott, which ran concurrently to his terms of life imprisonment on the other charges, the Court need not address that sentence here.

The threshold issue is Mr. Jones's eligibility for relief, which requires the Court to determine first whether he was convicted of a "covered offense" under Section 404 of the First

Step Act. If Mr. Jones is eligible for relief, the Court then must determine whether its discretion should be exercised to reduce his current sentence and, if so, by how much.

## A. Covered Offense

Section 404(a) of the First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." First Step Act § 404(a).

Nothing in this language restricts eligibility to defendants who were only convicted of a singular violation of a federal criminal statute whose penalties were modified by section 2 or section 3 of the Fair Sentencing Act. So long as a defendant was convicted of "a violation"—i.e., at least one violation—for which the penalties were modified by section 2 or 3 of the Fair Sentencing Act, he or she is eligible for relief.

As a multitude of district courts across the country have now recognized, "[i]t is the statute of conviction, rather than a defendant's actual conduct, that determines a defendant's eligibility under the First Step Act." *L. Williams*, 2019 WL 2865226, at *2 (S.D.N.Y. July 3, 2019) (citing *Rose*, 379 F. Supp. 3d at 228–31); *United States v. White*, No. 99-CR-628-04, 2019 WL 3228335, at *2 n.1 (S.D. Tex. July 17, 2019) (collecting forty-one district court cases reaching this conclusion); *see also United States v. Boulding*, 379 F. Supp. 3d 646, 651 (W.D. Mich. 2019) ("[E]ligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act. If so, the defendant is categorically eligible for consideration . . . ."); *but see White*, 2019 WL 3228335, at *5 ("Only a few courts have sided

with the government's position that eligibility turns on the defendant's actual conduct, rather than the charged offense . . . .") (collecting cases).

Eligibility for relief under the First Step Act thus turns not on whether a conviction, even if it incorporates several violations of criminal statutes, is a "covered offense," but whether there is a conviction of a violation of a criminal statute for which the statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act. Because the Fair Sentencing Act modified the penalties for a crime involving 50 grams or more of crack cocaine, that crime is a "covered offense" for purposes of the First Step Act. First Step Act § 404(a); *see also* Fair Sentencing Act § 2(a)(1) ("striking '50 grams' and inserting '280 grams'").

The Government argues that Mr. Jones is ineligible for relief under the First Step Act, although it recognizes that courts in this District have "ruled against the Government on four legal issues that are relevant here":

> First, the Court has held that the statute of conviction determines a defendant's eligibility under § 404, rather than the defendant's relevant or actual conduct. Second, the Court has found that a multi-object conspiracy to distribute both heroin and cocaine base is a "covered offense," even though the statutory penalties for the charged quantity of heroin under 21 U.S.C. § 841(b)(1)(A) were not changed by § 404. Third, the Court has held that, under § 404, a defendant is eligible for reduction of an aggregate sentence if convicted on both a "covered offense" and non-covered offenses. Fourth, the Court has indicated that it may resentence a defendant who falls within the First Step Act's ambit.

Gov't Opp. at 2-3 (internal citations omitted). Thus, the Government "recogniz[es] that the Court is likely to follow these prior rulings" with respect to the legal conclusions.

The Court agrees.

First, as this Court and other courts in this District have previously held, the statute of conviction determines a defendant's eligibility under the First Step Act. *See United States v.*

*Powell*, 99-cr-264-18 (VAB), 2019 WL 4889112, at *4 (D. Conn. Oct. 3, 2019) (collecting cases).

Before the Fair Sentencing Act's enactment, a jury convicted Mr. Jones and Judge Dorsey sentenced him for an offense involving 50 grams or more of crack cocaine, the statutory penalties for which were modified by Section 2 of the Fair Sentencing Act. Thus, his conviction was premised, at least in part, on his violation of 21 U.S.C. § 841(b)(1)(A). Mr. Jones therefore was convicted of a "covered offense" and is eligible for relief under the First Step Act. *See Medina*, 2019 WL 3769598, at *4.

But eligibility for relief does not equal entitlement to relief. *See Rose*, 379 F. Supp. 3d at 233 ("Congress clearly intended relief under § 404 of the First Step Act to be discretionary, as the Act specifically provides that '[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section.'" (quoting First Step Act, § 404(c))); *see also United States v. Mack*, No. 00-323-02 (KSH), 2019 WL 3297495, at *12 (D.N.J. July 23, 2019) ("Finding these defendants eligible does not write off their responsibility for dealing in powder cocaine as well as dealing in crack cocaine. That constitutes a fact that bears on what relief these defendants are entitled to. What the Court finds now is that the jury's verdict does not disqualify the Mack defendants from consideration under § 404.").

Accordingly, having been convicted of a "covered offense," Mr. Jones is eligible for relief under the First Step Act.

### B. Scope of Relief

Having concluded that Mr. Jones is eligible for relief under the First Step Act, the Court now must determine whether a sentence reduction is appropriate and, if so, what reduction is warranted.

As this Court has previously held, while the Court need not reach the issue of whether the First Step Act authorizes a "plenary re-sentencing," as some courts have held, *see, e.g.*, *Medina*, 2019 WL 3769598, at *6,  unlike previous rounds of sentencing reform, "the First Step Act does not impose any artificial or guideline limits on a reviewing court." *Boulding*, 379 F. Supp. 3d at 651.

The Government argues that – assuming the Court finds it has the authority to reduce the defendant's sentence, as this Court has found with respect to Mr. Jones here – the Court's "exercise of discretion should be informed by the 18 U.S.C. § 3553(a) factors." Gov't Opp. at 3. The Government notes particularly the need to avoid unwarranted sentencing disparities with Mr. Jones's co-defendants, some of whom have already had their sentences reduced by this Court under the First Step Act. *Id.* Finally, the Government emphasizes that "notwithstanding changes to the Guidelines in the intervening 16 years, a term of life imprisonment remains a Guidelines sentence." *Id.* at 4.

The Court agrees that its exercise of discretion should be informed by the § 3553(a) factors.

First, as the *Boulding* court and as many other courts have held, the First Step Act calls for a level of discretion that is previously unseen in sentencing statutes. It does not "impose any extrinsic limits on a sentencing court." *Mack*, 2019 WL 3297495, at *12.

As already discussed, Mr. Jones's drug sentence for Count Six was determined from a single count of conviction that involved three types of drugs: cocaine, cocaine base (crack cocaine) and heroin. But Mr. Jones was not only convicted of drug conspiracy – he was also convicted of RICO and RICO Conspiracy.

When Judge Dorsey pronounced Mr. Jones's sentence, he noted the guidelines indicated a life sentence was warranted for each count of conviction, besides Count Twenty-One's conspiracy to commit murder. Sent. Tr. at 34:6-9 ("Consistent with all of the factors that have already been laid on the table, as far as what's appropriate here, I come down to the fact that the guidelines control[.]"); *see also id.* at 34:9-21, 35:4-9, 36:11-37:12 (imposing three concurrent sentences of life imprisonment on Counts One, Two, and Six, and a ten-year term of imprisonment on Count Twenty-One).

With respect to Count Six, the sentencing transcript thus indicates that Mr. Jones was sentenced under one sentencing package. Judge Dorsey did not determine that sentence based on each individual drug, but instead imposed a sentence that would serve the ends of justice with respect to all drugs involved in the offense conduct.

The Court therefore finds that the crack cocaine violation was addressed with heroin and cocaine as part of a single sentencing package, and that these offenses are inextricably related. The Court thus has the authority to reduce Mr. Jones's entire drug conspiracy sentence under the First Step Act. *See, e.g.*, *United States v. Triestman*, 178 F.3d 624, 630 (2d Cir. 1999) ("We therefore hold that the district court had the authority under § 2243 to dispose of the matter as law and justice require, and that this authority included the power to resentence Triestman to the overall term that he would have received on his interdependent sentencing package absent his unlawful § 924(c) conviction."); *see also id.* at 631–32 (collecting cases).

But that still leaves the question of how this Court should treat the RICO and RICO Conspiracy convictions.

The U.S. Probation Office recommended sentences for Mr. Jones for these counts, based on the 2003 Sentencing Guidelines:

> The guideline for Counts One and Two, which charge RICO and RICO Conspiracy, is U.S.S.G. § 2El.l, comment.(n.l) which directs that each underlying act be treated as if contained in a separate count of conviction. The defendant is convicted of Act 1-D, which charges Drug Conspiracy, Act 9, which charges Conspiracy to Murder Foundation Members, Act 11-A, Count Five,[4] which charges Drug Conspiracy and Count Twenty One, which charge Conspiracy to Murder Anthony Scott. These offenses are prohibited from grouping under U.S.S.G. § 3Dl.2, and therefore a combined offense level is required under§ 3Dl.4. The defendant is also a career offender pursuant to U.S.S.G. § 4B1.1(b)(C), which calls for an offense level of 37, but the offense level otherwise applicable, as set forth below, will be used because it is greater.

2003 PSR ¶ 102. The Sentencing Guidelines then required the U.S. Probation Office (and the Court) to treat each underlying act in the RICO and RICO conspiracy counts as if they were separate counts, and then to group all closely related "counts" together. *See* U.S.S.G. § 2E1.1, cmt. n.1 ("Where there is more than one underlying offense, treat each underlying offense as if contained in a separate count of conviction for the purposes of subsection (a)(2)."); U.S.S.G. § 3D1.2 ("All counts involving substantially the same harm shall be grouped together into a single Group.").

The U.S. Probation Office thus separated the drug conspiracy acts from the conspiracy to murder acts. The U.S. Probation Office then calculated the Sentencing Guidelines range applicable to each Group, and was required to use the offense level of the most serious of the counts comprising the Group, *i.e.*, the highest offense level of the counts as follows:

---

[4] The Court assumes that the U.S. Probation Office meant Count Six instead of Count Five.

| | Group One<br>Conspiracy to Murder Foundation Members (Count One, Rack. Act 9)<br>RICO Conspiracy (Count Two) |
|---|---|
| **BASE Offense Level** | **28**<br>(based on underlying racketeering activity, U.S.S.G. § 2A1.5(a)) |
| Specific Offense Characteristics | 0 |
| Adjustment for Role in Offense | 0 |
| Victim Related Adjustment | 0 |
| Adjustment for Obstruction of Justice | 0 |
| **ADJUSTED Offense Level** | **28** |

| | Group Two<br>D-Top Drug Conspiracy (Count One, Rack. Act 1-D)<br>RICO Conspiracy (Count Two)<br>Conspiracy to Distribute Narcotics (Count Six) |
|---|---|
| **BASE Offense Level** | **38**<br>(based on conspiracy to distribute > 1.5 kilograms of cocaine base<br>and 30 kg of heroin, U.S.S.G. § 2D1.1(c)(1)) |
| Specific Offense Characteristics | + 2<br>(based on firearm use as part of conspiracy, although not by Mr. Jones himself) |
| Adjustment for Role in Offense | + 4<br>(leader and organizer of five or more people) |
| Victim Related Adjustment | 0 |
| Adjustment for Obstruction of Justice | 0 |
| **ADJUSTED Offense Level** | **44** |

|  | **Group Three**<br>Conspiracy to Murder Anthony Scott (Count One, Rack. Act 11-A)<br>RICO Conspiracy (Count Two)<br>Conspiracy to Murder Anthony Scott (Count Twenty-One) |
|---|---|
| **BASE Offense Level** | **43**<br>(based on underlying racketeering act,<br>which resulted in the death of a victim, U.S.S.G. § 2A1.5(c)(1)) |
| Specific Offense Characteristics | 0 |
| Adjustment for Role in Offense | + 4<br>(leader who directed and organized his brothers, Luke and Lance, to carry out the offense) |
| Victim Related Adjustment | 0 |
| Adjustment for Obstruction of Justice | 0 |
| **ADJUSTED Offense Level** | **47** |

*See* 2003 PSR ¶¶ 103–120. Because the offense level for Group One was nine or more levels less serious than Groups Two or Three, it was not assigned a "unit" for purposes of computing the total offense level. *See* U.S.S.G. § 3D1.4(c) ("Disregard any Group that is 9 or more levels less serious than the Group with the highest offense level. Such Groups will not increase the applicable offense level but may provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level.").

As a result, the U.S. Probation Office determined the combined offense level to be 49 for all four counts of conviction, based on Group Three's offense level. *Id.* ¶¶ 121–127; *see* U.S.S.G. § 3D1.4 ("The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table [based on the number of units]."). But because this level was in excess of 43, the Sentencing Guidelines required that Mr. Jones's offense level be reduced to 43. *Id.* ¶ 129; *see* U.S.S.G. ch. 5, pt. A, cmt. n.2.

Those Sentencing Guideline calculations were applied to all four offenses of conviction, resulting in a life sentence for three counts. *See* 2003 PSR ¶¶ 163–64 (stating that the statutory provisions provided maximum terms of life for Counts One, Two and Six, and a maximum of 10 years for Count Twenty-One, and that the guideline provisions provided "a guideline sentence of life imprisonment"). Thus, while Judge Dorsey pronounced individual life sentences for each count of conviction, those sentences all flowed from a single offense level and Sentencing Guidelines calculation determination – a Sentencing Guideline calculation substantially affected, if not driven, by the base offense level for the crack cocaine violation.

Indeed, Judge Dorsey expressed being as "frustrated" with what he described, in the singular, as a life sentence:

> In effect, if you really believe and want to live by what you said in that letter, the closer you come to Mother Theresa, in the way you live your life and the way you do things, that might be available for you, as to which you should consult your counsel . . ., and it may be that you will create a record that would be sufficiently positive, that will give you the opportunity to have some relief from the otherwise very serious sentence that's gonna be imposed in this case.
>
> So, I commend that you, without in any way making you any commitment or promises, but what I'm saying to you is, within your hands, as far as the way you conduct yourself, you may find some ability to get relief from the sentence that would otherwise pertain.

Sent. Tr. at 22:16-23:6, 23:8. The Court further notes that when Judge Dorsey declined to re-sentence Mr. Jones, he spoke of a single sentence. Dorsey Order at 3. ("Accordingly the Motion to Reconsider the sentence is granted but after due consideration, as discussed above, the sentence will not be reduced.").

The RICO, RICO Conspiracy, and heroin violations thus were addressed together, with the crack cocaine violation, as part of a single sentencing package, and these offenses are inextricably related. The Court therefore has the authority to reduce Mr. Jones's entire sentence

under the First Step Act. *See Triestman*, 178 F.3d at 630 ("We therefore hold that the district court had the authority under § 2243 to dispose of the matter as law and justice require, and that this authority included the power to resentence Triestman to the overall term that he would have received on his interdependent sentencing package absent his unlawful § 924(c) conviction."); *see also id.* at 631–32 (collecting cases).

But this still leaves the question of whether—and how—the Court should exercise this discretion. The operative issue at this stage is whether there is a basis consistent with the First Step Act for reducing Mr. Jones's life sentence.

After the Fair Sentencing Act, Count Six now mandates a statutory minimum of five years imprisonment and a statutory maximum of forty years. *See* 21 U.S.C. § 841(b)(1)(B)("In the case of a violation of subsection (a) of this section involving . . . (i) 100 grams or more of a mixture or substance containing a detectable amount of heroin; (ii) 500 grams or more of . . . cocaine . . . such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years[.]"). In other words, if Mr. Jones had been sentenced today for his cocaine base convictions, he could not have received a single sentence of more than forty years imprisonment.

The convictions under Counts One and Two, both RICO counts related to the underlying drug conspiracy and the conspiracy to commit murder, also do not provide a basis for a life sentence. The statutory maximum and minimums for the RICO and RICO conspiracies in Counts One and Two are based on the underlying predicate acts. For the drug conspiracy racketeering acts, the modifications under the Fair Sentencing Act would not result in a sentence above the statutory minimum of five years and a statutory maximum of forty years

imprisonment, a range no different from the statutory range for Counts Three, Four, and Six. *See* 21 U.S.C. § 841(b)(1)(B).

As for the RICO conviction under Racketeering Acts 9 and 11-A, a conspiracy to commit murder conviction cannot drive the RICO statutory maximum penalty. *See Powell*, 2019 WL 4889112 at *8 ("[A] conspiracy to commit murder conviction requires a violation of Connecticut General Statutes, Sections 53a-48(a) and 53a-54a4e, . . .[which] carries a maximum penalty of 20 years' incarceration. As a result, . . . the conspiracy to commit murder charge provides no basis for a sentence longer than twenty years."). Additionally, as already noted, Mr. Jones has served his ten-year term of imprisonment for Count Twenty-One's conspiracy to commit murder conviction[5]. *See* 2003 PSR ¶ 163 ("The maximum term for County Twenty is 10 years pursuant to 18 U.S.C. § 1959(a)(5)."); *see also* 18 U.S.C. § 1959(a)(5) (for violent crimes in aid of racketeering activity, "attempting or conspiring to commit murder or kidnapping . . . [is punishable] by imprisonment for not more than ten years or a fine under this title, or both . . .").

Because none of his convictions now provide for a life sentence, Mr. Jones's sentence of life imprisonment must be reduced to no more than the highest sentence now possible: forty years.

The question remains, though, whether the sentence should be reduced further.

---

[5] At sentencing, Judge Dorsey also noted Mr. Jones's relatively minimal role in the murder, despite the fact that Mr. Jones was first shot in the face by Anthony Scott:

> Mr. Leonard Jones gets shot, the evidence was rather clear that he identified Anthony Scott as his assailant. . . Just from knowing what little I do know about the characters of [Leonard's brothers] Luke and Lance, I don't think it was probably something that Leonard Jones specifically initiated, I don't think he had to, but I think he was at least acquiescent in that being the method by which the matter would be taken care of.

Sent. Tr. at 9:6-8, 9:23-10:3.

Although Judge Dorsey adopted the Pre-Sentencing Report's finding that the drug quantity attributable to Mr. Jones was more than 1.5 kilograms of crack cocaine and more than 30 kilograms of heroin, 2003 PSR ¶ 109, Mr. Jones argues there is no clear factual basis for the heroin quantity, Def.'s Mem. at 14-15.

The Court agrees.

The crack cocaine offense led to the Sentencing Guidelines sentence of life, so with respect to quantity, the Court will focus simply on the 1.5 kilograms of crack cocaine found by the jury.

Under today's Sentencing Guidelines, Mr. Jones's base offense level for a crime involving 1.5 kilograms of crack cocaine—located on the Drug Sentencing Table as 1.5 kilograms of powder cocaine, to account for the elimination of the crack-powder cocaine disparity[6]—is 24. *See* U.S.S.G. § 2D1.1(c)(4).

In determining whether Mr. Jones's sentence should be reduced, the Court will begin by re-calculating Mr. Jones's offense level for Group Two as follows—without disturbing any of the adjustments previously found by Judge Dorsey:

---

[6] Many courts, including courts that have held First Step Act hearings in this district, now use a 1:1 ratio for crack cocaine and powder cocaine. *See United States v. Lyle Jones*, No. 3:99-cr-264-6 (VAB), 2019 WL 4933578, at *15 n.2 (collecting cases) (D. Conn. Oct. 7, 2019).

| | Group Two<br>D-Top Drug Conspiracy (Count One, Rack. Act 1-D)<br>RICO Conspiracy (Count Two)<br>Conspiracy to Distribute Narcotics (Count Six) |
|---|---|
| **BASE Offense Level** | **24**<br>(based on conspiracy to distribute > 1.5 kilograms of cocaine base, using a 1:1 crack-powder ratio) |
| Specific Offense Characteristics | + 2<br>(based on firearm use as part of conspiracy, although not by Mr. Jones himself) |
| Adjustment for Role in Offense | + 4<br>(leader and organizer of five or more people) |
| Victim Related Adjustment | 0 |
| Adjustment for Obstruction of Justice | 0 |
| **ADJUSTED Offense Level** | **30** |

Accordingly, because Group One is only six levels less serious than Group Two, it is assigned one-half unit. U.S.S.G. § 3D1.4(b). This means the offense level in Group Two is increased an extra level, yielding a total offense level of 31 for Group Two.[7]

Under the current Sentencing Table, the Sentencing Guideline Range for a defendant with a criminal history category of VI (i.e., 13 or more criminal history points) and an offense level of 31 is a term of imprisonment of 188 to 235 months.

Before determining whether Mr. Jones's sentence should be reduced, and if so, by how much, the Court also will consider all of the relevant factors under 18 U.S.C. § 3553(a) and will consider "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (paragraph 2) of this subsection." *See Rose*, 379 F.Supp.2d at 234 ("[E]ven if consideration of § 3553(a) factors is not expressly required by the First Step Act, the Court

---

[7] Because, as discussed above, Mr. Jones has served the time warranted for the underlying conspiracy to murder charge, there is no need for the Court to re-calculate the Sentencing Guidelines, as if that conviction should be factored into the analysis.

concludes that it is appropriate to use that familiar framework to guide the exercise of discretion conferred by the First Step Act.").

Under this statute, the "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Under paragraph (2) of this subsection, the sentence must "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

In addition, the statute requires consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant," "the kinds of sentences available," the relevant "sentencing range established" for the offense, and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3),(4), and (6).

In doing so, the Court recognizes that Judge Dorsey previously declined to reduce Mr. Jones's sentence in October, 2009. Judge Dorsey likely, and rightfully, had serious concerns about the violent nature of this drug enterprise, as reflected in Mr. Jones's conviction for conspiracy to murder. *See* Dorsey Order at 2-3 ("All of the factors in defendant's case, the scale of the distribution, his role, the elimination of competition by use of violence in achieving the distribution, the murder of Anthony Scott . . . [t]here is no reasonable basis for imposing a non-trivial redcued sentence for which defendant has moved."). Indeed, the Government's successful prosecution of this far-ranging and devastating criminal enterprise at the P.T. Barnum Housing

Project and the lengthy prison sentences that followed have made Bridgeport and its residents safer. There is nothing in this record to suggest otherwise.

Put another way, a reconsideration of the length of Mr. Jones's sentence cannot and should not be construed as either a reconsideration of his underlying conviction or a reconsideration of the propriety of a lengthy sentence for this conviction. The issue is not whether Mr. Jones should have served a lengthy prison sentence. Instead, having determined that Mr. Jones is eligible for consideration of relief under the First Step Act, the issue is whether the length of that sentence should be reduced, having taken into consideration his various criminal acts and all of the other factors relevant under 18 U.S.C. § 3553(a).

In this regard, Judge Dorsey expressed his frustration over the length of the sentence imposed, and noted to Mr. Jones that "as far as the way you conduct yourself, you may find some ability to get relief from the sentence that would otherwise pertain." Sent. Tr. at 23:4-6; *see also id.* at 21:19-21 ("[W]hile you are incarcerated, there are two things that are open to you. One is a pardon, the other is a commutation of your sentence."). In other words, Judge Dorsey was not unalterably opposed to Mr. Jones serving a term of imprisonment of less than life.

As a result, having considered all of the relevant factors under 18 U.S.C. § 3553(a), including the fact that Mr. Jones has already served over 237 months of his sentence (without any consideration of the applicability of good-time credits), a sentence reduction from life to a sentence of time served would not be inappropriate, especially given the re-calculated Sentencing Guidelines range of 188 to 235 months.

This reduction takes into consideration Mr. Jones's significant drug activity as well as the violent acts of which Mr. Jones was convicted (and in which there was concern he otherwise participated, regardless of conviction) and is sufficient but not greater than necessary to serve the

purposes of a criminal sentence. *See* 18 U.S.C. § 3553(a). Furthermore, given that several of Mr. Jones's co-defendants have recently had their sentences reduced, this reduction also avoids unwarranted sentence disparities. *See Powell*, 2019 WL 4889112; *United States v. Damon Walker*, Order Reducing Sentence, No. 3:99-cr-264-19, ECF No. 2536 (Aug. 27, 2019); *United States v. Lonnie Jones*, Order Reducing Sentence, No. 3:99-cr-264-3, ECF No. 2558 (Aug. 27, 2019); *United States v. Kenneth Richardson*, Ruling and Order on First Step Act Mot. for Immediate Release or Resentencing, No. 3:99-cr-264-8, ECF No. 2585 (Oct. 3, 2019); *United States v. Lyle Jones*, Ruling and Order on First Step Act Mot. for Immediate Release or Resentencing, No. 3:99-cr-264-6, ECF No. 2592 (Oct. 7, 2019).

The Court has also considered Mr. Jones's rehabilitation efforts and his behavior while incarcerated, and both support a reduction of his sentence. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) ("[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing.").

In his nearly two decades of incarceration, Mr. Jones has a minimal disciplinary record, and in the last six years has not incurred a single disciplinary ticket. *See* Def.'s Mem. at 12 n.19; *see also* Ex. B: Mem. from Unit Officer, ECF No. 2595-2 (Oct. 4, 2019) ("When ever asked to do something inmate Jones is respectful and timely in completing the task. Inmate Jones get [sic] along with others and maintains a clean cell."). Additionally, Mr. Jones has used his time wisely while incarcerated by participating in various educational programming and "shar[ing] his passion for music with his fellow inmates, somehow finding equipment and playing with partners and organizing a band." Def.'s Mem. at 40. Finally, Mr. Jones has a comprehensive re-

entry plan to facilitate his return to the community, which provides for his "housing, employment, and medical and mental health care upon release." *Id.* at 42-43.

Given the time Mr. Jones has already served,[8] the Court accordingly reduces Mr. Jones's three concurrent life sentences to a sentence of **TIME SERVED**, a sentence consistent with the current Sentencing Guidelines and the broad remedial purpose of the First Step Act.

Judge Dorsey did not ultimately impose a term of supervised release for Counts One, Two, and Six, Sent. Tr. 36:21-37:4, but he did impose a term of three years supervised release on Count Twenty-One, to be served concurrently in accordance with 18 U.S.C. § 3624(e), *id.* 37:5-12. But because 21 U.S.C. § 841(b)(1)(A) still mandates a minimum term of supervised release of five years for a crime involving than one kilogram or more of heroin, and Judge Dorsey's previous life sentence did not provide for a term of supervised release, the Court will impose a five (5) year term of supervised release, with all the standard and mandatory conditions required under 18 U.S.C. § 3583(d) and U.S.S.G. § 5D1.3. To the extent that a term of supervised release needs to be re-imposed, the Court does so now, with all the standard and mandatory conditions required under 18 U.S.C. § 3583(d) and U.S.S.G. § 5D1.3.

If Mr. Jones violates any term of his supervised release, he will be subject to up to two (2) additional years of incarceration for each violation, without credit for any time already spent on supervised release.

---

[8] Mr. Jones has served over 237 months, without any consideration of any good-time credits otherwise available. *See* 18 U.S.C. § 3624(b) ("a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence of up to 54 days for each year of the prisoner's sentence imposed by the court"). Given the absence of anything in this record to suggest that he would not be eligible for the good-time credits available to all federal prisoners, based on their conduct while incarcerated, the amount of time Mr. Jones has served far exceeds the top of the newly re-calculated Sentencing Guidelines range of 235 months.

**IV.    CONCLUSION**

For the reasons explained above, the Court (1) **GRANTS** the motion; (2) **ORDERS** that Mr. Jones's sentence of incarceration be **REDUCED** to **TIME SERVED** upon arrival at MDC Brooklyn on **December 23, 2019**; and (3) **IMPOSES** a term of supervised release of **5 YEARS**.

The Clerk of Court is respectfully directed to file an amended judgment and terminate this case.

**SO ORDERED** at Bridgeport, Connecticut, this 19th day of December, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE
